## SUNNYBROOK COAL CO. v. UNITED STATES.

### No. 46896.

United States Court of Claims.

Dec. 6, 1948.

William A. Clineburg, of Washington, D. C. (Vesey, Prince & Clineburg, of Washington, D. C., on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., Theron Lamar Caudle, Asst. Atty. Gen. (Andrew D. Sharpe, of Washington, D. C. on the brief), for defendant.

Before JONES, Chief Judge, and HOWELL, MADDEN, WHITAKER and LITTLETON, Judges.

JONES, Chief Judge.

This is a suit to recover a transportation tax on coal shipped by rail and barge ultimately delivered to the City of Detroit.

The issue arises in this way: under Section 3475 [1] of the Internal Revenue Code a tax of four cents per short ton is levied on the amount paid for the transportation of coal.

---

[1] "Sec. 3475. Transportation of property. (a) Tax. There shall be imposed upon the amount paid within the United States after the effective date of this section for the transportation, on or after such effective date, of property by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 per centum of the amount so paid, except that, in the case of coal, the rate of tax shall be 4 cents per short ton. Such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire, including amounts paid to a freight forwarder, express company, or similar person, but not including amounts paid by a freight forwarder, express company, or similar person for transportation with respect to which a tax has previously been paid under this section. In the case of property transported from a point without the United States to a point within the United States the tax shall apply to the amount paid within the United States for that part of the transportation which takes place within the United States. The tax on the transportation of coal shall not apply to the transportation of coal with respect to which there has been a previous taxable transportation.

"(b) Exemption of government transportation. The tax imposed under this section shall not apply to (1) amounts paid for the transportation of property to or from the government of a State, Territory of the United States, or political subdivision thereof, or the District of Columbia, or an international organization, or any corporation created by Act of Congress to act in matters of relief under the treaty of Geneva of August 22, 1864, (2) amounts paid to the Post Office Department for the transportation of property, or (3) amounts paid by or to the War Shipping Administration for the transportation of property by water from one point in the United States to another, except between points on the Great Lakes.

"(c) Returns and payment. The tax imposed by this section shall be paid by the person making the payment subject to the tax. Each person receiving any payment specified in subsection (a) shall collect the amount of the tax imposed from the person making such payment, * * *."

Subdivision (b) of such section provides certain exemptions including "amounts paid for the transportation of property to or from the government of a State * * * or political subdivision thereof * * *."

By the terms of subdivision (c) the person receiving the transportation payment is charged with the duty of collecting the tax.

On February 24, 1944, a written contract was made by the terms of which plaintiff agreed to furnish and the City of Detroit, Michigan, agreed to purchase 275,000 tons of coal between April 1 and November 30, 1944, to be produced at specified mines in Pennsylvania.

The prices were to be F. O. B. the City Dock at Detroit, Michigan. The prices included the 4 cents a ton tax with the stipulation that the prices to the city would be reduced the amount of the transportation tax if the shipments could be made without payment of the tax.

On March 14, 1944, the Secretary of the American Coal Sales Association, of which plaintiff was a member, addressed a letter to the Deputy Commissioner of the Internal Revenue Bureau requesting a ruling on whether coal consigned by plaintiff at the mines to the "City of Detroit, c/o Sunnybrook Coal Company, Glasgow consignment, PRR Docks, Cleveland," would be exempt from such tax.

In a letter dated March 29, 1944, the Deputy Commissioner advised the Association that coal consigned in the manner indicated would not be subject to the tax. The pertinent part of this letter is set out in finding 4.

The ruling of the Bureau as embodied in the letter was communicated to the plaintiff by the Association. For several months thereafter plaintiff consigned coal in the manner indicated and no transportation tax was collected by the defendant on such coal.

Under date of April 25, 1944, the Director of the Office of Defense Transportation addressed a letter of inquiry to the Assistant Secretary of the Treasury in which he referred to a report that the Deputy Collector of Internal Revenue had indicated that in order to be exempt the entire movement must be directly from the mines to the exempt agency. He called attention to the fact that in shipments of coal to a Canadian consignee the exportation of an equivalent quantity of the same grade and kind of coal as ordered would satisfy the requirement so as to relieve from the imposition of the transportation tax the entire movement of the coal from mine to Canadian consignee, regardless of whether it was billed to the consignee direct from the mine. He asked if the same ruling could not be applied on coal shipped for use by a state or political subdivision thereof so as to relieve from the imposition of the transportation tax the entire movement of the coal. He called attention to the fact that this would simplify the question of classification and tend to relieve the coal car shortage.

On May 6, 1944, the Acting Commissioner of Internal Revenue responded that in such a case reconsignment to an exempt agency at the lake port of an equivalent quantity of the same grade and kind of coal would meet the exempt requirements of Section 3475 (b) of the Code, so as to relieve from the imposition of the tax the entire movement of the coal from the mine to the exempt agency. In the second paragraph of the letter the Commissioner stated that such conclusion would not apply unless the shipping papers show that the coal was consigned to an exempt agency in care of the transshipper at the lake port. These letters, which are set out in finding 6, were mailed to the plaintiff.

On May 13, 1944, the coal and ore agent of the Pennsylvania Railroad Company wrote the plaintiff regarding the matter of tax exemption on coal being shipped by plaintiff to the City of Detroit, specifying by number the forms to be filled out in connection with such shipments.

Plaintiff then began to ship coal from the mines to the lake port for the City of Detroit under consignment to itself, but using and sending in the forms as directed. This method was used in order to avoid the payment of demurrage at the lake port. When a shipment from the mines failed to arrive at a lake port in time for loading on the boat on which it was to be carried, plaintiff could take the coal from another shipment which had been consigned to it and thereby make up a full boat load. In the course of its performance of this con-

tract the plaintiff shipped during July, August, and September 16,192.30 tons of coal from Pennsylvania to the rail carrier's Lake Erie docks and there had the coal dumped into vessels and floated across the lake to the City of Detroit dock where it was delivered F. O. B. to the city. With the exception of 210.20 tons of coal which have now been eliminated by the plaintiff, the consignees on the railway bills of lading were the names which the ore and coal agent had assigned to the plaintiff for its use on shipments destined for shipment across Lake Erie. These identifying names were used to prevent the coal of any one lake forwarder from being confused with that of other lake forwarders. As this tonnage arrived in freight cars at the lake carrier's Lake Erie docks it was under plaintiff's instructions dumped into vessels for delivery to the City of Detroit. The consignee on the final bills of lading which covered the movement of the tonnage on the final lap of its journey across the lake to the City of Detroit dock was the City of Detroit.

After the execution of the contract between the plaintiff and the City of Detroit, the parties entered into a further agreement by the terms of which the City of Detroit agreed to cooperate in the exempting of coal covered by the contract from the transportation tax. Pursuant to this agreement the plaintiff did not bill the City of Detroit and that city did not pay plaintiff the 4 cents per ton transportation tax on the coal covered by the contract. The net price paid by the City of Detroit did not include the amount of the tax.

In accordance with the letter of May 13, 1944, plaintiff executed and mailed to the Pennsylvania Railroad Company tax exemption certificates for the 15,982.10 tons of coal which were shipped as indicated.

On September 11, 1944, the coal and ore agent of the Pennsylvania Railroad Company wrote plaintiff stating that some confusion had arisen from some of the correspondence, that his letter of May 13, was in error, and that the coal should have been billed to the Government or political subdivision thereof or to the transshipper in care of the subdivision. It therefore billed plaintiff for the transportation tax of $647.69 on the shipments of the 15,982.10 tons of coal. Plaintiff paid the amount of the tax to the Pennsylvania Railroad Company, which in turn transmitted the amount to the appropriate collector of internal revenue.

Plaintiff filed a timely claim for refund on the ground that the coal was not subject to the transportation tax. The Bureau of Internal Revenue rejected plaintiff's claim on the ground that the coal was not billed from the mines to a state or political subdivision thereof.

We can see no sufficient reason why this tax should have been collected. The coal was actually shipped and delivered to the City of Detroit, pursuant to a contract calling for such delivery. It was manifestly intended for use by the exempt agency. The method of billing was only varied to meet the question of practical handling and to simplify classification and lessen the use of transportation facilities which were already in short supply. The methods and forms used were identical with the methods and forms used in shipments from the mines to Canadian points which were ruled to be exempt. The most direct route was used and neither the route nor destination was changed during a continuous movement. Every reason for exemption from the tax was present and only a technical question of the form of billing was involved and even that was in effect approved by the Deputy Commissioner of Internal Revenue in one of his letters. Neither the language of the Code nor the facts of this case justify the retention of the tax. The plaintiff is entitled to recover the sum of $639.28, together with interest from February 3, 1945, as provided by law.

It is so ordered.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.